# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

**JOMO REYNOLDS,**

           **Plaintiff,**

    **v.**

**CITY OF ATLANTA, MAYOR M. KASIM REED, individually, and in his official capacity as Mayor of the City of Atlanta, COMMISSIONER YVONNE C. YANCY, individually, and in her official capacity as Commissioner of Human Resources for the City of Atlanta, REBEKAH JOY ROHADFOX, an individual, and ROHADFOX CONSTRUCTION CONTROL SERVICES CORPORATION,**

           **Defendants.**

           **1:13-cv-1494-WSD**

## OPINION AND ORDER

This matter is before the Court on Defendants Mayor M. Kasim Reed and Yvonne C. Yancy's Motion to Dismiss Plaintiff's Second Amended Complaint [112] ("Motion to Dismiss"). Also before the Court is Defendants Rebekah Joy Rohadfox ("R. Rohadfox") and Rohadfox Construction Control Services Corporation's ("RCCSC") (together with Defendants Reed, Yancy and City of Atlanta, "Defendants") Joinder of Defendants Reed and Yancy's Motion to

Dismiss [114] ("Motion for Joinder").

## I.    BACKGROUND

A.    <u>Facts</u>[1]

The City of Atlanta (the "City") has within it a Department of Watershed Management ("Watershed Management Department" or "Department").  In June 2012, Sharon Rohadfox ("S. Rohadfox"), not a defendant in this action, was the Project Management Office Director ("PMO Director")[2] in the Watershed Management Department.  Defendant R. Rohadfox is S. Rohadfox's sister-in-law and was, in 2012, the CEO of Defendant RCCSC.[3]

On September 18, 2012, Sherri Dickerson ("Dickerson"), the Human Resources Manager for the City of Atlanta, offered Plaintiff the PMO Director position, and, on September 26, 2012, Plaintiff accepted the position.  After leaving the Watershed Management Department, S. Rohadfox began working for Defendant RCCSC.  Plaintiff asserts that Defendant RCCSC regularly conducts

---

[1]    The operative complaint is Plaintiff's Second Amended Complaint [108] ("SAC"), which incorporates, in its entirety, Plaintiff's First Amended Complaint [30] ("FAC").  The facts are taken both from Plaintiff's SAC and the FAC it incorporates.

[2]    Plaintiff's FAC and SAC do not define PMO.  The Court infers PMO stands for "Project Management Office."

[3]    When Plaintiff applied for the PMO Director position previously held by S. Rohadfox, and which she left on June 30, 2012, he was a Senior Vice President at RCCSC.

business with the Watershed Management Department, and has billings to the Department in an amount in excess of $1 million.

Plaintiff claims that after leaving the Department, S. Rohadfox was subject to a mandatory "cooling off" period, prohibiting her from engaging in procurement of business with the City of Atlanta, for six (6) months, or appearing before or receiving compensation from the City, for one (1) year.  Plaintiff claims the "cooling off" period is set out in Sections 2-1484 and 2-810 of the Atlanta Code of Ordinances ("Code").[4]

Plaintiff claims that, on October 16, 2012, he learned that S. Rohadfox still

---

[4]     Section 2-1484(a) of the Code states that "unless otherwise provided, in accordance with [S]ection 2-808, no former officer or employee shall participate directly or indirectly in a city procurement for a period of six months after termination of service or employment with the city."  Atl. Code of Ord. § 2-1484(a).  Section 2-810 of the Code provides, in relevant part:

> No person who has served as an official or employee shall, for a period of one year after separation from such service or employment, appear before any agency or receive compensation for any services rendered on behalf of any person, business or association in relation to any case, proceeding, or application with respect to which such former official or employee was directly concerned or in which such official or employee personally participated during the period of such official's or employee's service or employment or which was under such official's or employee's active consideration or with respect to which knowledge or information was made available to such official or employee during the period of such official's or employee's service or employment.

Id. at § 2-810.

3

possessed City property and claims that, on October 26, 2012, he saw her using her City-issued computer and cell phone at a meeting.  He also claims that he learned at the October 26, 2012, meeting that S. Rohadfox had access to the City's email system and certain City databases.  Plaintiff alleges that he attended the October 26, 2012, meeting to obtain information and City documents from S. Rohadfox.  By attending the meeting, Plaintiff believed that S. Rohadfox was violating the required "cooling-off" period.

Plaintiff claims that he asked a representative at the Department's Human Resources section to request S. Rohadfox to return the City property she possessed.[5]  Having learned that S. Rohadfox had access to City-issued electronic devices, email and other databases, Plaintiff "became reasonably concerned that confidential information contained in such equipment, and other City equipment to which [S.] Rohadfox still had access, was compromised and could cause substantial harm to the interests of the City."  (FAC ¶ 33).  He believed that S. Rohadfox was not "abiding by certain laws, policies, ordinances, and/or

---

[5]     Plaintiff alleges that the City's HR representative failed to have the property returned.  Plaintiff claims that, at some other point, he learned that S. Rohadfox's employment with the Department did not end until September 15, 2012, although she began working for Defendant RCCSC in July, 2012.

regulations regarding the prohibition on former City employees from conducting business with the City until a legally mandated 'cooling off' period has been observed." (Id. ¶ 35).  In Plaintiff's opinion, this alleged breach of the "cooling off" period requirement was inappropriate because S. Rohadfox's employer, Defendant RCCSC, regularly conducted business with the City, and the Department specifically.  (Id. ¶ 36).

Plaintiff decided to escalate his concerns.  He claims that he conveyed them to Dickerson, and urged her to "reclaim [the] equipment and cut off access from [S.] Rohadfox."  (Id. ¶ 42).  Plaintiff claims that Dickerson told Defendants Reed and Yancy, and "other City officials," that Plaintiff "had communicated with [S. Rohadfox] in the weeks following Plaintiff's hiring, concerning the City's, [S.] Rohadfox's and RCCSC's improprieties . . . ."  (Id. ¶¶ 46-48).  Plaintiff claims he was told that "appropriate City officials would look into the matter," but Plaintiff alleges he continued to see that S. Rohadfox was still being copied on emails that involved official City business.  (Id. ¶¶ 49-50).

Plaintiff alleges that, on November 2, 2012, he contacted Defendant R. Rohadfox, and told her that "[S.] Rohadfox's continued involvement in official City business . . . was inappropriate, improper, and in violation of state and/or local law, policy, ordinance, and or/regulation."  (Id. ¶ 52).  Plaintiff claims Defendant

5

Yancy, the Commissioner of Human Resources at the City of Atlanta, called Plaintiff into her office "within days of his conversation with Dickerson, and within hours after making Defendant [R. Rohadfox] and Defendant RCCSC verbally aware of his concerns . . . ." (Id. ¶ 57). Plaintiff alleges that, in the presence of Kristi Matthews, an attorney with the City of Atlanta, Defendant Yancy informed Plaintiff that his employment with the City was terminated. (Id. at ¶ 58).[6] Plaintiff alleges that he was immediately placed on administrative leave, and his official employment termination date was set for January 6, 2013.

On November 7, 2012, Plaintiff requested Defendant Yancy to explain why he was being terminated. Defendant Yancy allegedly said "that there would be no reason given for his termination." (Id. at ¶ 64). On January 28, 2013, Plaintiff received a letter from the Department of Labor stating that he was terminated because "his services were no longer needed." (Id. at ¶ 66).

The focus of Plaintiff's FAC is that he was terminated from the Department because he complained that S. Rohadfox failed to return City-issued technology devices, improperly had access to the City's email system and unspecified databases, and violated the "cooling off" period required after she left the PMO

---

[6]     Plaintiff does not specify the date this meeting occurred.

Director position at the Department.[7]

In his SAC, Plaintiff alleges that his job duties with the Department were

restricted to the following:

> (1) implementing capital improvement infrastructure projects for the
> Department (such as determining the material resources required to
> assemble new projects for the Department); (2) manage deadlines for
> such infrastructure projects; (3) manage engineering efforts related to
> Department construction projects; (4) communicate the progress and
> status of infrastructure projects to the Deputy Director of Engineering
> (such as technical issues, project cost-to-complete reports, and
> analysis as to whether such infrastructure projects were operating on
> schedule); (5) advising the Director of Engineering of any flaws or
> unexpected design/physical engineering problems/changes or defects
> in material aspects of any ongoing project efforts; and, (6) plan and
> supervise the actual mechanics/engineering scope-of-work and
> operating/construction schedule of capital infrastructure and
> construction projects.

(SAC ¶ 3).  Plaintiff also alleges he was "specifically told and informed in a

meeting during his first week of employment with the Department":

> (1) that he was not responsible for and had no ability to perform the
> hiring or firing of Department or City employees; (2) that hiring and
> firing determinations (and associated and tangential
> duties/obligations) were handled at the Deputy Commissioner's level
> or above and by the Human Resources Department – neither of which
> was Plaintiff a part of; (3) that he was not responsible for distributing

---

[7]     Plaintiff alleges certain coordinated conduct between some of the parties and
occasionally within a few paragraphs refers to this conduct using the phrase "said
speech jeopardized [Defendants Reed's and Yancy's] joint conspiracy with
Defendant Rohadfox and RCCSC."  See, e.g., FAC ¶¶ 153, 154, 186, 187.

> employment or job-related equipment, passes, passcodes, email access or database access to employees once they are hired, or to actually collect or ensure the reclamation of such from any employee(s) of the Department or City once such employee(s) are terminated; (4) that he was not responsible for performing any duty or responsibility allocated to the Human Resources Department or to persons in the Deputy Commissioner's level or above, such as ensuring former employees abide by Department or City codes, ordinances, policies, or procedures.

(Id. ¶ 4).  He alleges his job duties "did not include the maintenance of Department or City databases or files[,]" and "Plaintiff was not employed for the purpose of preserving the security of Department or City property, mainframes, databases, information or files—or any person's access to such."  (Id. ¶ 5).  Finally, Plaintiff alleges that it was the Human Resources Department's duty to "ensure former employees abide by Department or City codes, ordinances policies, or procedures[,]" and to "maintain and preserve the security of Department or City property, mainframes, databases, information or files—or any person's access to such."  (Id. ¶6).

B.    Procedural History

On May 3, 2013, Plaintiff filed his fifteen-count (15) Complaint against Defendants City of Atlanta, Reed, Yancy, R. Rohadfox and RCCSC.  On

August 16, 2013, Plaintiff filed his FAC.[8]  The FAC alleges that Defendants

violated federal and state law by causing Plaintiff to be terminated for complaining

about S. Rohadfox's improper retention of City-issued equipment, improper

post-termination access to the City's email system and other databases, and her

failure to observe the post-employment "cooling off" period after she left the

Department.

In his FAC, Plaintiff asserts the following federal claims under Section 1983

against all Defendants:  (1) violation of Plaintiff's rights under the First and

Fourteenth Amendment to speak out on a matter of public concern resulting in the

termination of Plaintiff's employment (Counts III, IV and V);[9] and (2) under the

Due Process Clause of the Fourteenth Amendment, for depriving Plaintiff of his

alleged property interest in the continuation of his employment with the City

(Count VI).  Plaintiff seeks an award of attorneys' fees and expenses incurred in

this litigation (Count XII).[10]  Plaintiff also asserts state law claims against all

---

[8]      Plaintiff's FAC is 110 pages and consists of 346 paragraphs.

[9]      Count III is alleged against the City of Atlanta, Count IV against Reed and
Yancy, and Count V against R. Rohadfox and RCCSC.

[10]     Plaintiff also asserts the following state law claims against individual
Defendants:  (1) violation of the Georgia Whistleblower Act against the City of
Atlanta for terminating Plaintiff for speaking out against S. Rohadfox's wrongful
retention of City property and certain City-issued systems and databases, and for
her failure to observe the required post-termination "cooling off" period (Count I);

Defendants for invasion of privacy – false light (Count IX), defamation (Count X), and intentional infliction of emotional distress (Count XI).

On August 30, 2013, Defendants R. Rohadfox and RCCSC moved, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the FAC for failure to state a claim upon which relief can be granted.  On September 3, 2013, and September 4, 2013, respectively, Defendant City of Atlanta and Defendants Reed and Yancy moved, under Rule 12(b)(6), to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted.

On December 31, 2014, this action was reassigned to this Court.

On March 31, 2015, the Court entered an Order [59] (the "March 31st Order") granting in part and denying in part Defendants' motions to dismiss.  In its March 31st Order, the Court granted the City's motion to dismiss Plaintiff's claims for violation of his First Amendment right to speak on a matter of public concern (Count III), deprivation of property and liberty interests under the Due Process

---

(2) wrongful termination against the City of Atlanta, Reed and Yancy, in their individual and official capacities, because he was wrongfully terminated for speaking out on a matter of public concern (Count II); (3) tortious interference with contractual relations (Count VII) and business relations (Count VIII) against R. Rohadfox and RCCSC, for intentionally interfering with his employment contract, and business relationship, with the City by directing Reed and Yancy to terminate Plaintiff's employment because he complained about S. Rohadfox's allegedly improper conduct; and (4) punitive damages against Reed and Yancy, in their individual capacities, and R. Rohadfox and RCCSC (Count XII).

Clause (Count VI), and state law claims for wrongful termination (Count II), defamation (Count X), and false light (Count IX).  The Court denied the City's motion to dismiss Plaintiff's claims for violation of the Georgia Whistleblower Act (Count I), intentional infliction of emotional distress (Count XI), and request for attorneys' fees (Count XII) and punitive damages.[11]  The Court granted Reed and Yancy's motion to dismiss Plaintiff's claims against them in their official capacities, claims under the Due Process Clause (Count VI), and state law claims for defamation (Count X) and false light (Count IX).  The Court denied Reed and Yancy's motion to dismiss Plaintiff's claims for violating his First Amendment right to speak on a matter of public concern (Count IV), state law claim for intentional infliction of emotional distress (Count XI), and request for attorneys' fees and punitive damages (Count XII).  The Court granted R. Rohadfox and RCCSC's motion to dismiss Plaintiff's Due Process claim (Count VI), and his state law claims for tortious interference with contractual relations (Count VII), defamation (Count X) and false light (Count IX).  The Court denied R. Rohadfox and RCCSC's motion to dismiss Plaintiff's claim for violating his First Amendment right to speak on a matter of public concern (Count V), state law

---

[11]    Plaintiff does not seek punitive damages against the City in his FAC or SAC.

claims for tortious interference with business relations (Count VIII) and intentional infliction of emotional distress (Count XI), and request for attorneys' fees and punitive damages (Count XII).

In its March 31st Order, the Court determined that Reed and Yancy's motion to dismiss on the ground that they are entitled to qualified immunity was required to be denied as moot, because the parties failed to properly address whether the Amended Complaint adequately alleges that Reed and Yancy engaged in conduct that denied them qualified immunity.  The Court noted that the question for the Court that was not addressed by the parties was whether Plaintiff spoke as a "citizen" on a matter "of public concern," or whether Plaintiff spoke out as an "employee" on a matter that relates to his job responsibilities.  See Boyce v. Andrew, 510 F.3d 1333, 1342-43 (11th Cir. 2007).  The Court stated that a public employee's speech is not protected when his statements are made pursuant to his official duties, as opposed to when he is speaking as a private citizen on matters of public concern.  See Garcetti v. Ceballos, 547 U.S. 410, 421 (2006); see also Watkins v. Bowden, 105 F.3d 1344, 1353 (11th Cir. 1997); Maggio v. Sipple, 211 F.3d 1346, 1353 (11th Cir. 2000); Boyce, 510 F.3d at 1343.  If Plaintiff did not speak as a private citizen on a matter of public concern, then not only are Defendants Reed and Yancy entitled to qualified immunity from suit, but Plaintiff

12

also may not have viable First Amendment claims against Reed, Yancy,

R. Rohadfox, and RCCSC.

      The Court directed the parties to address this issue by allowing Reed and

Yancy to renew their motion, on the ground of qualified immunity, in a

supplemental motion to dismiss filed on or before April 20, 2015, focusing on the

character of speech issue.  On April 16, 2015, Plaintiff filed his Motion for Leave

to File a Second Amended Complaint, seeking to "clarify/specify certain

allegations contained in his First Amended Complaint that touch on the [qualified

immunity] issue on which the Court has ordered additional briefing."  ([68] at 2).

Specifically, Plaintiff sought to add allegations defining his job duties and

responsibilities.  On April 20, 2015, Defendants Reed and Yancy filed their

renewed motion to dismiss [70], seeking to dismiss this action on the ground of

qualified immunity.

      On August 11, 2015, the Court entered an Order [105] (the "August 11th

Order") staying discovery in this action.  In concluding that discovery should be

stayed, the Court noted that, if Plaintiff did not speak as a private citizen on a

matter of public concern, "Plaintiff also likely does not have a viable First

Amendment claim against R. Rohadfox and RCCSC . . . ."  (August 11th Order at

9).  Because Plaintiff's First Amendment claims are the only remaining federal

claims in this action, the Court noted "it is likely that the Court will not exercise supplemental jurisdiction over the state law claims in this case if the federal claims are dismissed . . . ."  (Id. at 10).

On October 29, 2015, the Eleventh Circuit Court of Appeals issued its decision in Alves v. Bd. of Regents of the Univ. Sys. of Ga., 804 F.3d 1149 (11th Cir. 2015), clarifying the standard for protected speech set forth by the United States Supreme Court in Garcetti .

On November 12, 2015, the Court entered an Order [107] granting Plaintiff's Motion for Leave to File a Second Amended Complaint and denying as moot Reed and Yancy's April 20, 2015, motion to dismiss.  The Court required Defendants Reed and Yancy to file, on or before November 30, 2015, a renewed motion to dismiss addressing the issue of qualified immunity in light of the Eleventh Circuit's decision in Alves.

On November 30, 2015, Reed and Yancy filed their Motion to Dismiss.  In it, they argue that Plaintiff spoke as an employee rather than a private citizen, including because (a) his speech concerned the subject matter of his job, (b) Alves establishes that, when speech implicates an employee's job duties, the employee speaks as an employee, not as a public citizen, (c) Plaintiff's SAC demonstrates his speech was made in the course, and within the scope, of his professional duties,

14

and (d) Plaintiff did not make his concerns public.  (Br. in Supp. of Mot. [112.1] ("Br.") at 4-17).  Reed and Yancy also argue that, because Plaintiff's speech was not protected, his whistleblower claim and his claim of intentional infliction of emotional distress fail as a matter of law.  (Id. at 18 n.11).

On December 2, 2015, Defendants R. Rohadfox and RCCSC filed their Motion for Joinder.  In it, they adopt the argument and citation of authority in the Motion to Dismiss, and argue that "a finding of qualified immunity for [Reed and Yancy] should result in dismissal of the remaining federal law claim asserted against Rohadfox and RCCSC—Count V 42 U.S.C. § 1983 Conspiracy."  (Mot. for Joinder at 1-2).

## II.    LEGAL STANDARD

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "assume that the factual allegations in the complaint are true and give the plaintiff[] the benefit of reasonable factual inferences."  Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010).  Although reasonable inferences are made in the plaintiff's favor, "'unwarranted deductions of fact' are not admitted as true."  Aldana v. Del Monte Fresh Produce, N.A., 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting S. Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996)).  Similarly, the

Court is not required to accept conclusory allegations and legal conclusions as true. See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (construing Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Mere "labels and conclusions" are insufficient. Twombly, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). This requires more than the "mere possibility of misconduct." Am. Dental, 605 F.3d at 1290 (quoting Iqbal, 556 U.S. at 679). The well-pled allegations must "nudge[] their claims across the line from conceivable to plausible." Id. at 1289 (quoting Twombly, 550 U.S. at 570).

## III.   ANALYSIS

A.   Qualified Immunity

Defendants Reed and Yancy contend they are entitled to qualified immunity from suit because Plaintiff failed to state a claim for the violation of Plaintiff's First Amendment right to speak out on a matter of public concern.

1.   Legal Framework

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  "Suits against government officials for damages against them individually are costly not only for the defendants, but for society as a whole.  The social costs include the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office."  Post v. City of Fort Lauderdale, 7 F.3d 1552, 1556 (11th Cir. 1993) (internal quotation marks and citations omitted).  "Qualified immunity recognizes that, where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken with independence and

17

without fear of consequence." Id.

The burden is on Plaintiff to show that Defendants Reed and Yancy are not entitled to qualified immunity. See Dalrymple v. Reno, 334 F.3d 991, 995 (11th Cir. 2003). A motion to dismiss based on qualified immunity should be denied if the plaintiff alleges "sufficient facts to support a finding of a constitutional violation of a clearly established law." Chandler v. Sec'y of Fla. Dep't of Transp., 695 F.3d 1194, 1198 (11th Cir. 2012) (citing Oliver v. Fiorino, 586 F.3d 898, 905 (11th Cir. 2009)); see also Andreu v. Sapp, 919 F.2d 637, 639 (11th Cir. 1990) ("[T]he defendant is entitled to dismissal when the plaintiff has failed to *allege* a violation of a clearly established right.").

It is well-established in the Eleventh Circuit that actions taken against employees who exercise their First Amendment rights and raise constitutionally protected matters of public concern violate clearly established constitutional rights. See Tindal v. Montgomery Cty. Comm'n, 32 F.3d 1535, 1540 (11th Cir. 1994) (sheriff's department violated employee's First Amendment right by terminating her employment in retaliation for testifying on behalf of co-workers in a race and sex discrimination lawsuit); see also Hicks v. Ferrero, 241 F. App'x 595, 598-99 (11th Cir. 2007) (noting that a prisoner's First Amendment rights are violated when prison officials retaliate against him for filing a grievance). The Eleventh

Circuit has specifically held that a reasonable government official should know that taking adverse action against a whistleblower violates the First Amendment. See Akins v. Fulton Cty., 420 F.3d 1293, 1308 (11th Cir. 2005) (prior Circuit precedent should have placed defendant on notice that whistleblowers are protected by the First Amendment); Walker v. Schwalbe, 112 F.3d 1127, 1132 (11th Cir. 1997) (defendants were not entitled to qualified immunity because they should have known that demoting an employee for his speech was illegal).

It is equally clear that speech for which a plaintiff claims he was retaliated against must be speech that is constitutionally protected.  See Stanley v. City of Dalton, 219 F.3d 1280, 1288 n.13 (11th Cir. 2000) ("When there is a personal element to the speech, complaints of wrongdoing within a public agency may not constitute speech on a matter of public concern.").  The Supreme Court of the United States sets forth a two-step inquiry into whether the speech of a public employee is constitutionally protected:

> The first requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on . . . h[is] employer's reaction to the speech.  If the answer is yes, then the possibility of a First Amendment claim arises.  The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public [based on the government's interests as an employer].

Garcetti, 547 U.S. at 418 (citations omitted).  Both steps are questions of law for

19

the court to resolve.  Alves, 804 F.3d at 1159.

The first step is comprised of two elements.  "For h[is] speech to be constitutionally protected, an employee must have spoken (1) as a citizen and (2) on a matter of public concern."  Id. at 1160.  Reed and Yancy's Motion focuses on the first element of this analysis:  whether Plaintiff spoke as a citizen or an employee.  Regarding the first element, the Supreme Court has held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  Id. (citing Garcetti, 547 U.S. at 421).  The Supreme Court further held:

> The proper inquiry is a practical one.  Formal job descriptions often bear little resemblance to the duties an employee is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes.

Id. (citing Garcetti, 547 U.S. at 424-25).

### 2.     Whether Plaintiff Spoke as a Citizen or an Employee

As an initial matter, the parties disagree whether, and to what extent, the Eleventh Circuit's Alves decision changed the citizen-employee inquiry.  Plaintiff argues that Alves and the Supreme Court's recent decision in Lane v. Franks, 134 S. Ct. 2369 (2014) "narrowed" the citizen-employee inquiry, and the Court should

thus deny Reed and Yancy's Motion.  In <u>Lane</u>, the Supreme Court held that

"[t]ruthful testimony under oath by a public employee outside the scope of his

ordinary job duties is speech as a citizen for First Amendment purposes."  134 S.

Ct. at 2378.  As the Eleventh Circuit noted in <u>Alves</u>, the <u>Lane</u> holding "is a narrow

one . . . [b]ecause it was undisputed that the employee's ordinary job

responsibilities did not include testifying in court proceedings."  804 F.3d at 1163.

Nevertheless, the Eleventh Circuit found that <u>Lane</u> "narrowed the field of

employee speech left unprotected by <u>Garcetti</u>."  <u>Id.</u>  After <u>Lane</u>, <u>Garcetti</u> "must be

read narrowly to encompass speech that an employee made in accordance with or

in furtherance of the ordinary responsibilities of h[is] employment, not merely

speech that concerns the ordinary responsibilities of h[is] employment."  <u>Id.</u> at

1162.  The Court cautioned, however, that this "is not a substantial shift in the law.

It is, if anything, a slight modification and a useful clarification."  <u>Id.</u> at 1163.

Applying <u>Garcetti</u>, the Eleventh Circuit has held that the "central inquiry is

whether the speech at issue 'owes its existence' to the employee's professional

responsibilities."  <u>Id.</u> (citing <u>Moss v. City of Pembroke Pines</u>, 782 F.3d 613, 618

(11th Cir. 2015)).  The controlling factor is "whether the employee's statements or

expressions were made 'pursuant to [his] official duties.'"  <u>Id.</u> (quoting <u>Garcetti</u>,

547 U.S. at 421).  "Activities undertaken in the course of performing one's job are

activities undertaken 'pursuant to employment responsibilities.'" Id. (citing

Garcetti, 547 U.S. at 422-24).  "Practical factors that may be relevant to, but are

*not* dispositive of, the inquiry include the employee's job description, whether the

speech occurred at the workplace, and whether the speech concerned the subject

matter of the employee's job." Id. (emphasis in original).

Reed and Yancy argue that Plaintiff's own allegations in his FAC and SAC

show that Plaintiff's speech concerned the subject matter of his job.  Plaintiff's

Response largely side-steps Reed and Yancy's argument, and focuses instead on

the SAC's delineation of what Plaintiff's job responsibilities *were not*.  (See Resp.

at 3-7).  He argues that he had "no duty to police or supervise" former employees,

and argues that, "because Plaintiff's ordinary duties and responsibilities only

concerned technical matters, Plaintiff had no ordinary job responsibility to

affirmatively contact Departmental contractors to inform them that either they, or

one of their employees, were violating City policies or ordinances . . . ."  (Id. at

6-7).  Plaintiff concludes that he has set out "what his job responsibilities

encompassed and what they excluded.  Plaintiff has shown that, in the context of

his position and Department (and within the City generally), certain ordinary job

responsibilities belonged to him, while other ordinary job responsibilities belonged

to other[s]."  (Id. at 7).

First, the Eleventh Circuit and the Supreme Court have specifically instructed that the citizen-employee inquiry is a "practical one," and that "formal job descriptions 'often bear little resemblance to the duties an employee actually is expected to perform.'" Alves, 804 F.3d at 1164 (quoting Garcetti, 547 U.S. at 424-25). That a separate official or department was tasked with specific responsibilities does not mean that Plaintiff's job did not, formally or informally, encompass those responsibilities, or that Plaintiff's speech was not made "in furtherance of the ordinary responsibilities of [his] employment[.]" Id. at 1162. Second, the Court disagrees with Plaintiff's characterization of his job responsibilities as set out in his FAC and SAC, and concludes that his alleged job responsibilities encompassed the speech he made, that the matter about which he spoke was based on and arose from his performance of job, and that he spoke in furtherance of his ordinary job responsibilities.

Phillips v. City of Dawsonville, 499 F.3d 1239 (11th Cir. 2007) is instructive here. In Phillips, plaintiff served as city clerk and city treasurer. She was responsible for, among other things, "the collection, custody, accounting and disbursement of [all city] funds." Id. at 1242. Plaintiff claimed retaliation based upon her disclosures about the former mayor's conduct while in office. The allegations related to the former mayor's use of city funds to purchase a car battery

23

and lumber; to the storage of city property at his home; to the use of city and

county labor for the mayor's private benefit; and to the sexual harassment of an

employee who was Plaintiff's assistant and under Plaintiff's general supervision.

Id.  In upholding the lower court's dismissal of the plaintiff's complaint, the

Eleventh Circuit noted that plaintiff's alleged job duties were broad enough to

encompass the speech at issue, finding that "[a]ll these allegations touch on a

misuse of City resources—money, services, or property—for the Mayor's private

gain or on potential city liability or both.  Although her enumerated duties did not

specify reporting misconduct by the Mayor, it was within her official duties to

inquire about and make statements on the potentially inappropriate use of the City

resources."  Id.  In reaching this conclusion, the Eleventh Circuit noted that the

Garcetti inquiry "is a pragmatic one," and rejected plaintiff's arguments that her

speech fell outside the scope of her official enumerated duties.  Id.[12]

---

[12]     The Phillips decision was issued prior to the Lane and Alves decisions.  To
the extent Lane and Alves "narrowed" the citizen-employee inquiry, the Court
finds those cases did not overturn existing Eleventh Circuit precedent.  As the
Eleventh Circuit noted in Alves, the Lane decision did not herald a "substantial
shift in the law.  It is, if anything, a slight modification and a useful clarification."
804 F.3d at 1163.  The Court in Phillips found that it was within the plaintiff's
official duties to inquire about and make statements on the potentially
inappropriate use of city resources, and found the First Amendment does not
protect a government employee "fulfilling official responsibilities."  Phillips, 499
F.3d at 1242-43.  These findings are precisely what Alves and Lane require:

Here, Plaintiff alleges he was the PMO Director of the City's Watershed Management Department.  (FAC ¶¶ 15, 19).  He alleges his speech concerned S. Rohadfox, whom Plaintiff replaced as PMO Director, and who left City employment to work for RCCSC.  (Id. ¶¶ 20-22).  Plaintiff alleges that "Defendant RCCSC regularly conducted, and continues to conduct, substantial contractual work for the City in an amount in excess of one million dollars, and, in particular, conducted, and continues to conduct, business through and under the supervision of the Department of Watershed Management."  (Id. ¶ 23).  He alleges his job duties as PMO Director included the following:

> (1) implementing capital improvement infrastructure projects for the Department (such as determining the material resources required to assemble new projects for the Department); (2) manage deadlines for such infrastructure projects; (3) manage engineering efforts related to Department construction projects; (4) communicate the progress and status of infrastructure projects to the Deputy Director of Engineering (such as technical issues, project cost-to-complete reports, and analysis as to whether such infrastructure projects were operating on schedule); (5) advising the Director of Engineering of any flaws or unexpected design/physical engineering problems/changes or defects in material aspects of any ongoing project efforts; and, (6) plan and supervise the actual mechanics/engineering scope-of-work and operating/construction schedule of capital infrastructure and construction projects.

---

protected speech is that which "an employee made *in accordance with* or *in furtherance of* the ordinary responsibilities of her employment, not merely speech that *concerns* the ordinary responsibilities of her employment."  Alves, 804 F.3d at 1162 (emphasis added).

(SAC ¶ 3).  Plaintiff also alleges his professional "area of expertise is in the consultation, management, and supervision of engineering and/or construction endeavors of municipalities and the contractors of such municipalities."  (FAC ¶ 287).

Plaintiff alleges he spoke out on the following issues:  (i) S. Rohadfox's wrongful possession of City property she did not return when she left her employment, (ii) S. Rohadfox's wrongful access to the City's email system and databases, (iii) S. Rohadfox's failure to observe the mandated "cooling off" period, (iv) S. Rohadfox's failure to observe the prohibition against simultaneous employment, and (v) the conflicts of interest created by the above-stated improprieties.  (Resp. [118] at 2).  He alleges he spoke out because he was concerned that S. Rohadfox's conflicts of interest and retention of City property might cause "confidential information" to be compromised and "could cause substantial harm to the interests of the City."  (FAC ¶ 33; see also id. ¶¶ 34, 40, 41, 43, 119, 128).  He also was concerned that S. Rohadfox's activities "would provide[] an unfair and improper advantage to Defendant RCCSC in its work with the City of Atlanta and Department of Watershed Management."  (Id. ¶ 53).

Because Plaintiff was Project Management Office Director at the Watershed Management Department, many of the duties listed in his SAC necessarily

26

required dealing with construction contractors such as RCCSC, which Plaintiff

claims conducted "business through and under the supervision of the Department

of Watershed Management."  (Id. ¶ 23).  For instance, "implementing capital

improvement infrastructure projects" logically includes ensuring contractors like

RCCSC perform their work efficiently and within budget, and "manag[ing]

engineering efforts related to Department construction projects" includes managing

the work of contractors like RCCSC, which responsibility Plaintiff claims is his

"area of expertise," (id. ¶ 287).  "[C]ommunicat[ing] the progress and status of

infrastructure projects" including creating "project cost-to-complete reports"

includes monitoring contractors for potential cost overruns.  These allegations

make clear that reporting fraud, abuse, and conflicts of interest with respect to

contractors under Plaintiff's management is plainly within the scope of his

responsibilities as PMO Director.  This remains the case despite Plaintiff's claims

that reporting ethical infractions is not an enumerated, official, duty, and even if

different departments or employees have official authority over these matters.

Plaintiff's allegation that he spoke out because he was concerned that

S. Rohadfox's activities "would provide[] an unfair and improper advantage to

Defendant RCCSC in its work with the City of Atlanta and Department of

Watershed Management," (FAC ¶ 53), further supports that his speech was in

furtherance of his responsibilities as PMO Director of the Department.  It is no stretch to infer that Plaintiff's job performance may suffer—or his professional integrity may be called into question—if a contractor had "an unfair and improper advantage" in bidding for and performing the projects it was his responsibility to oversee.  See Alves, 804 F.3d at 1165 ("Implicit in Appellants' duty to perform their roles as psychologists, committee members, supervisors, and coordinators is the duty to inform . . . those that would appear to have the most need to know and best opportunity to investigate and correct the barriers to Appellants' performance.").  Indeed, Plaintiff alleges his "profession is rather small and based upon reputation and word of mouth[,]" (FAC ¶ 289), underscoring the professional concerns behind Plaintiff's speech.

The conflicts of interest Plaintiff alleges here also are directly tied to his professional responsibilities, because they arise from S. Rohadfox's previous employment as PMO Director of the Department—the job Plaintiff took over—and her current employment at RCCSC—a contractor that did "substantial contractual work" under the supervision of the Department and Plaintiff.  The compromised confidential information about which Plaintiff was concerned was confidential information relating to the Department and to the PMO Director position.

As in Phillips, all of Plaintiff's allegations "touch on" his responsibilities as

28

project manager overseeing construction projects and the contractors that carry out

those projects.  "Although h[is] enumerated duties did not specify reporting

misconduct by [former employees], it was within h[is] official duties to inquire

about and make statements on . . . potentially inappropriate" activities by

contractors under his supervision.  See Phillips, 499 F.3d at 1242.[13]

Turning to the remaining factor—whether the speech occurred at the

workplace—Reed and Yancy argue that the employment-based character of

---

[13]     Reed and Yancy also point to City ordinances they argue show Plaintiff was
required to report alleged ethical violations.  As a City employee, Plaintiff was
governed by the City of Atlanta Code of Ethics.  See Atl. Code of Ord. §§ 2-803.
Under the Code, Plaintiff "may" report alleged ethical violations.  See id.  Section
2-1744 also provides that supervisors have a duty to report unsafe conditions,
actions or procedures to "prevent[] accidental loss to any person or property."
Section 2-1741 provides that such a "loss" may result from fraud.  S. Rohadfox's
"wrongful possession of City property" and "wrongful access to the City's email
systems and data bases" likely fall under the definition of a "loss" under the Code.
The unfair competitive advantages of which Plaintiff alleges he was concerned
likewise could lead to a "loss" of City property.  Section 2-1741 further provides
that it is a policy of the city to minimize the financial burden incurred by its
citizens as a result of fraud "which may arise out of the operations of the city."
Atl. Code of Ord. § 2-1741.  The activities in which Plaintiff alleges S. Rohadfox
was engaged fall under this general provision.  Plaintiff responds by identifying a
number of Ordinances requiring other officials or departments to "police or
supervise" former employees' activities.  As discussed above, that a separate
official or department was tasked with specific responsibilities does not mean that
Plaintiff's job responsibilities did not also encompass those responsibilities, or that
Plaintiff's actions were not made "in furtherance of the ordinary responsibilities of
[his] employment[.]"  Alves, 804 F.3d at 1162.  The Court finds the Code further
supports that Plaintiff's responsibilities encompassed the speech at issue.

Plaintiff's speech is underscored by the forum in which he spoke.  The Court

agrees.  Plaintiff alleges he reported his concerns about S. Rohadfox to the

following individuals:  Desiree Armstrong-Wright, a human resources

representative at the Department; HR Manager Sherri Dickerson; S. Rohadfox;

R. Rohadfox; [14] and RCCSC.  (FAC ¶¶ 26, 28, 42, 51, 94).  He also alleges he

"made appropriate city officials aware."  (Id. ¶¶ 40-41).  In other words, he voiced

his concerns only in his workplace and to Defendants.  As in Alves, while "not

dispositive to [the] inquiry, [Plaintiff] made no attempt to make [his] concerns

public."  804 F.3d at 1168; [15] see also Murphy v. Gilmer Cty., No. 2:11-cv-114-

RWS, 2013 WL 1213310, at *7 (N.D. Ga. Mar. 25, 2013) ("The manner in which

[plaintiff] communicated his reports is also consistent with speech by an employee,

---

[14]     In his Response, Plaintiff does not identify R. Rohadfox by name, instead
characterizing her as "an outside and external third party who had no official
supervisory authority over him or interest in his employment, with whom he had a
prior personal relationship for a period of at least 2 years, and who he had—at the
time—considered a friend."  (Resp. at 3).  This characterization is a disingenuous
attempt to cast Defendant R. Rohadfox, the CEO and principal agent of RCCSC,
(FAC ¶ 8), as a disinterested member of the general public rather than as a
Defendant in this litigation.
[15]     The Alves court made this observation in considering Garcetti's second
threshold prong—whether the plaintiffs spoke on a matter of public concern.
Whether the speech at issue occurred in the workplace is nevertheless one factor to
consider in the citizen-employee analysis.  See Alves, 804 F.3d at 1163.  The Court
here finds the internal, non-public nature of Plaintiff's speech further supports that
Plaintiff spoke as an employee.

not a citizen . . . .).  The internal nature of Plaintiff's speech further supports that Plaintiff spoke as an employee.

Simply put, Plaintiff was the director of project management at the Watershed Management Department, whose complaints directly concerned alleged wrongdoings by individuals and entities who regularly bid on and performed projects for the Department—individuals and companies that would be under Plaintiff's supervision and management.  These allegations show that Plaintiff's job responsibilities encompassed the speech he made, and that he spoke pursuant to his professional responsibilities.  See Alves, 804 F.3d at 1163.  The largely internal nature of Plaintiff's speech further supports that he spoke as an employee rather than as a citizen.  Taking Plaintiff's allegations as true, and performing the "pragmatic inquiry" required by Garcetti, the Court concludes that Plaintiff's own allegations show that his speech "'owe[d] its existence' to [his] professional responsibilities," Alves, 804 F.3d at 1163, and that Plaintiff thus spoke as an employee rather than as a citizen.[16]

---

[16]  Reed and Yancy also argue that, under Georgia law, employees owe a general duty of loyalty to their employers.  (Br. at 11).  In Phillips, the Eleventh Circuit declined to decide whether Georgia law provides that all city employees owe a duty of loyalty to the city.  499 F.3d at 1242 n.2.  This Court, in unpublished opinions, previously has relied on Georgia's duty of loyalty requirements in First Amendment retaliation cases.  See, e.g., Springer v. City of Atlanta, No. CIVA

Because Plaintiff spoke as an employee, not as a citizen, his speech was not constitutionally protected.[17]  See Alves, 804 F.3d at 1165.  Because his speech was not protected, Plaintiff's First Amendment claim against Reed and Yancy is dismissed.  Reed and Yancy also are entitled to qualified immunity from suit, because Plaintiff has failed to allege a violation of a clearly established right.  See Andreu, 919 F.2d at 639; Chandler, 695 F.3d at 1198.  Plaintiff's claims against Reed and Yancy in their individual capacities are dismissed.

The question whether Plaintiff's speech was constitutionally protected also affects Plaintiff's remaining federal claim against R. Rohadfox and RCCSC.  The Court addresses Plaintiff's remaining claims below.

---

1:05CV0713 GET, 2006 WL 2246188, at *3 (N.D. Ga. Aug. 4, 2006).  The Court here concludes it is unnecessary to find that Georgia's duty of loyalty applies, because Plaintiff's job responsibilities encompassed the subject matter of the speech at issue.

[17]  Having determined that Plaintiff spoke as an employee, the Court need not address whether Plaintiff spoke on a matter of public concern.  See Alves, 804 F.3d at 1165 n.5.  Without deciding the issue, the Court finds it is at least doubtful that Plaintiff's FAC and SAC show he spoke on a matter of public concern.  As noted above, Plaintiff's concerns were aired only internally and to RCCSC—City contractors that performed work under Plaintiff's supervision.  Plaintiff does not allege he attempted to make his concerns public.  The main thrust of Plaintiff's speech appears to be professional in nature, notwithstanding Plaintiff's allegations that he spoke because of his concern for the public good.

B.    Plaintiff's Remaining Claims

The only remaining federal claim is Plaintiff's claim against R. Rohadfox and RCCSC for a violation of his First Amendment right to speak on a matter of public concern (Count V).  R. Rohadfox and RCCSC argue that "a finding of qualified immunity for [Reed and Yancy] should result in dismissal of the remaining federal law claim asserted against Rohadfox and RCCSC—Count V 42 U.S.C. § 1983 Conspiracy."  (Mot. for Joinder at 1-2).  Plaintiff's federal claim for a First Amendment violation against R. Rohadfox and RCCSC is based on a Section 1983 conspiracy theory that allows a plaintiff to recover damages against a private party if he shows that the defendants "reached an understanding to violate [the plaintiff's] rights."  See Strength v. Hubert, 854 F.2d 421, 425 (11th Cir. 1988), overruled in part on other grounds by Whiting v. Traylor, 85 F.3d 581, 584 n.4 (11th Cir. 1996).  As the Court noted in its March 31st Order, "[t]he predicate for a Section 1983 conspiracy is the substantive constitutional violation committed by the defendants, and allegations of a conspiracy serve to extend liability to non-state actors."  (March 31st Order at 27).  Because the Court now finds that Plaintiff's speech was not constitutionally protected, Plaintiff does not have a viable underlying constitutional violation to serve as the basis for a conspiracy claim under Section 1983, and there cannot be a "conspiracy" without an

33

"understanding to violate [the plaintiff's] rights."  See Christman v. Holmes, 448 F. App'x 869, 873 (11th Cir. 2011) ("[G]iven that Christman's complaint did not allege an underlying constitutional violation, it necessarily failed to allege a § 1983 conspiracy." (citing NAACP v. Hunt, 891 F.2d 1555, 1563 (11th Cir. 1990))); Strength, 854 F.2d at 425.  Plaintiff's First Amendment claim (Count V) against Defendants R. Rohadfox and RCCSC is dismissed.

In its August 11th Order staying discovery, the Court noted "it is likely that the Court will not exercise supplemental jurisdiction over the state law claims in this case if the federal claims are dismissed . . . ."  (August 11, 2015, Order at 10). Where "no basis for original federal jurisdiction presently exists, the district court has the discretion to decline to exercise supplemental jurisdiction."  Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., 402 F.3d 1092, 1123 (11th Cir. 2005) (citing 28 U.S.C. § 1367(c)); see also Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1288 (11th Cir. 2002) (whether to continue to exercise supplemental jurisdiction is a decision that "should be and is vested in the sound discretion of the district court").  Here, the FAC alleges that the Court has original jurisdiction, pursuant to 28 U.S.C. § 1331, over Plaintiff's federal law claims.  Plaintiff's federal law claims have been dismissed.  The parties are not diverse, and the Court does not have any basis, other than supplemental jurisdiction, for jurisdiction over

Plaintiff's state law claims.  As suggested in its August 11th Order, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  Accordingly, this action is dismissed.

## IV.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants Mayor M. Kasim Reed and Yvonne C. Yancy's Motion to Dismiss Plaintiff's Second Amended Complaint [112] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants Rebekah Joy Rohadfox and Rohadfox Construction Control Services Corporation's Joinder of Defendants Reed and Yancy's Motion to Dismiss [114] is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

**SO ORDERED** this 28th day of April, 2016.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

35